U.S. BANK NATIONAL ASSOCIATION,  )
                                  )
        Plaintiff,           )
                                  )
      vs.                 )      Case No. 4:16-CV-730-CEJ
                                  )
PAMELA D. MOSES and ROBERT J.  )
BRISCOE,                      )
                                  )
        Defendants.

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to stay this case pending resolution of Chapter 11 bankruptcy proceedings in *In re Trans Coastal Supply Company, Inc.,* Case No. 15-71147, Dkt. No. 1 (Bkr. C.D. III July 23, 2015). Plaintiff filed a response in opposition to defendants' motion and the issues are fully briefed.

### I. Background

Plaintiff initiated this action on May 20, 2016, asserting, *inter alia*, claims of conversion and breach of contract with respect to guaranties of a commercial loan executed by defendants. [Doc. #1, at 1]. According to plaintiff, defendants Pamela D. Moses and Robert J. Briscoe "guaranteed the obligations and indebtedness of the Trans Coastal Supply Company, Inc. . . . under a financing agreement and a secured revolving promissory note as well as a term loan note." *Id.*[1] Under the

---

[1] U.S. Bank and Trans Coastal entered into the first Financing Agreement on April 30, 2013, in which U.S. Bank gave Trans Coastal a revolving credit loan up to a maximum of $35,000,000. [Doc. #1-4 at 2]. Trans Coastal executed a revolving promissory note at that time. [Doc. #1 at 3]. The terms of that loan note included an acceleration clause in the event of default. [Doc. #1-4 at 2]. Moreover, the parties agreed that the terms of note would be governed by Missouri law. [Doc. 1-4 at 2]. The parties consented to jurisdiction in St. Louis, Missouri. [Doc. #1-4 at 3]. That loan subsequently increased to $50,000,000.

terms of the loan guarantees, each defendant guaranteed "prompt payment and performance" of up to $3,000,000, any interest accrued on the loans, and representation costs and expenses incurred by the plaintiff to enforce the guaranties. *Id.* at 4. The guaranties were not subject to any exception for bankruptcy or other proceedings that might affect the borrower. [Doc. #25 at 3].

The borrower, Trans Coastal, went into default on June 30, 2014. [Doc. #1-6 at 2]. In November 2014, the parties entered into a Forbearance Agreement and Amendment to the Loan Agreement, in which the parties acknowledged default, and agreed that the total outstanding balances on the Revolving Loans and Term Loan were $4,474,994.26 and $1,158,800, respectively. [Doc. #1-7 at 2, 4]. The parties agreed that certain tax refunds to the guarantors would be paid to plaintiff. *Id.* at 6. Then on July 23, 2015, Trans Coastal filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of Illinois. [Doc. #1 at 2].

Demand was sent to defendants in the amount of $2,517,298.64 on September 15, 2015. [Doc. #1-8 at 3; Doc. #1-9 at 3]. Plaintiff subsequently filed this action on May 20, 2016. [Doc. # 25 at 5]. In its complaint, plaintiff alleged that defendants owed $2,084,042.76. [Doc. #1, at 2].

Currently before the Court is defendants' motion to stay proceedings in this case pending resolution of Trans Coastal's bankruptcy action. [Doc. #21]. The parties disagree as to the status of the bankruptcy proceedings and the payments made on the loans to date.

---

[Doc. #1-4 at 6]. On December 30, 2013, U.S Bank granted a term loan for $1,350,000 to Trans Coastal. [Doc. #25 at 2–3].

## II. Discussion

Although the automatic stay provision of 11 U.S.C. § 362 does not cover defendants who are not debtors in a bankruptcy proceeding, a district court nonetheless has discretion to grant a discretionary stay. 11 U.S.C. § 362(a); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Am. Prairie Constr. Co. v. Hoich,* 560 F.3d 780, 789 (8th Cir. 2009); *but c.f. Pub. Pension Fund Grp. v. KV Pharm. Co.*, No. 4:08-CV-1859-CEJ, 2013 WL 1293816, at * 3   (E.D. Mo., Mar. 28, 2013) (where this Court declined to extend an automatic stay to non-debtor parties).

*Landis* provides that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254; *see also Contracting Nw., Inc. v. City of Fredricksburg*, 713 F.2d 382, 387 (8th Cir. 1983) (noting that district courts have "inherent power to grant [a] stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it."). In evaluating a potential stay, a district court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255. The party seeking a stay must "make out a clear case of hardship or inequity." *Id.* The burden is on the party "seeking to delay the usual course of discovery and trial." *Jones v. Clinton*, 72 F.3d 1354, 1364 (8th Cir. 1996).

Courts consider other factors as well, including efficiency concerns, such as "the prospect of narrowing the factual and legal issues in the proceeding." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). "[T]he time reasonably expected for resolution of the 'other case,'" may also feature in a court's calculus. *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (quoting

3

*McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982)). But, "case management standing alone is not necessarily a sufficient ground to stay proceedings." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). Additionally, Congress has "implicitly recognized" that additional expense is not sufficient cause to stay a proceeding by "excepting certain actions from the automatic provision." *E.E.O.C. v. Rath Packing Co.*, 787 F.3d 318, 325 (8th Cir. 1986).

In sum, a district court should weigh three factors in determining whether to grant a stay: "(1) potential prejudice to the nonmoving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *Simmons v. GlaxoSmithKline, LLC*, No. 4:15-CV-1397-CDP, 2015 WL 6063926, at *1 (E.D. Mo. Oct. 14, 2015); *see also Emerson v. Lincoln Elec. Holdings, Inc.*, No. 09-6004-CV-SJ-GAF, 2009 WL 690181, at *1 (W.D. Mo. Mar. 12, 2009); *Buie v. Blue Cross and Blue Shield of Kansas City, Inc.*, No. 05-0534-CV-W-FJG, 2005 WL 2218461 (citing *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)).

### Prejudice to the Nonmoving Party

Defendants argue that plaintiff will suffer "little prejudice" if the Court institutes a stay because Trans Coastal makes regular monthly payments of $12,500 to plaintiff. [Doc. #22 at 14; Doc. #28 at 2]. Defendants also argue that litigation without a stay would also result in a delay in remedy for plaintiff. *Id.* Defendants concede that there are thirty additional creditors in the bankruptcy action, but argue that because plaintiff is the "only named secured creditor," it will

get "swift adjudication with regard to its claims." *Id.* As a consequence, defendants maintain that "any delay of payment in this matter caused by a stay would be virtually nonexistent." *Id.* at 14–15.

The Court disagrees with defendants. The swiftest remedy may arise from this litigation and accordingly a stay may be prejudicial for the plaintiff. First, there is no guarantee that Trans Coastal will continue to make payments to plaintiff. And plaintiff's position as a secured creditor does not ensure full collection of debts. In fact, plaintiff asserted that although Trans Coastal owes over two million dollars, it "had cash on hand of only $25,600." [Doc. #25 at 1]. The parties also present conflicting information about the amount Trans Coastal has paid to plaintiff to date and the nature of Trans Coastal's monthly payments.[2] Second, plaintiff's remedy may be delayed by a stay if the bankruptcy court does not approve the reorganization plan. Defendant avers that bankruptcy will ensure the speedy recovery of debts; however, this is speculative. Although a hearing is now set for approval of the Disclosure Statement on February 21, 2017, creditors still must vote to confirm the plan. [Doc. #29 at 2]. And moreover, plaintiff recently informed the Court that the United States Trustee and the plaintiff have both filed objections to the Disclosure Statement; the bankruptcy court found that the Disclosure Statement required "'significantly more information.'" *Id.* at 1–2. Additionally, the bankruptcy court may still reject the proposed reorganization plan. Potential delay is a factor courts consider in evaluating prejudice to the non-moving party and a

---

[2] Plaintiff claims that "only nominal payments from the prepetition receivables have been received since March 2016." [Doc. #25 at 5]. Defendant claims that "in total Trans Coastal has paid U.S. Bank $670,000 while the Bankruptcy Action has been pending." [Doc. #22 at 7]. The parties present different accounts regarding the significance of Trans Coastal's monthly payments of $12,500. *See* [Doc. #25 at 5; Doc. #22 at 14].

stay could delay plaintiff's remedy here. *See Fisher Controls Co., Inc. v. Control Components, Inc.*, 443 F. Supp. 581, 583 (S.D. Iowa, 1977); *Barnes v. Zurn Pex, Inc.*, No. 1:07-CV-074, 2008 WL 111217, at *3 (D. North Dakota Jan. 9, 2008).

### Prejudice to the Moving Party

Defendants argue that without a stay they will be "forced to duplicate work on related issues" and will incur costs and attorneys' fees. [Doc. #22 at 16]. Defendants' arguments regarding prejudice center around their potential litigation costs; however, that factor is simply not sufficient to justify a stay. *See E.E.O.C. v. Rath Packing Co.*, 787 F.2d 318, 325 (8th Cir. 1986). The Court accordingly finds that defendants have not made out a "clear case of hardship or inequity," given that "there is even a fair possibility that the stay for which [they] pray[] will work damage to some one else." *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

### Judicial Economy

Defendants argue that judicial economy provides the primary justification for a stay. They point to "substantial overlap" among the issues in the two proceedings. [Doc. #22 at 11]. Defendants claim that if the reorganization plan is approved, plaintiff's "claims under the Guaranties would be entirely, or almost entirely, resolved." *Id.* Defendants also acknowledge, however, that the third count of the complaint arises from a separate agreement between plaintiff and the guarantors. *Id.* at n.2.

The Court disagrees with the defendants – judicial economy does not justify a stay in this matter. A stay should be granted when two parallel proceedings have significant overlap in issues, parties, and arguments. *Capitol Indem. Corp. v.*

*Haverfield*, 218 F.3d 872, 875 (8th Cir. 2000); *c.f. Giebink v. Giebink*, No. CIV-08-4184, 2009 WL 917438, at *2 (D. S.D. Mar. 31, 2009) (recognizing that "it is not necessary that the parties, and the issues in the two be proceedings be identical"). First, as previously mentioned, there is a separate cause of action here for conversion of tax refunds. Resolution of the bankruptcy proceedings would not affect that claim. *See* [Doc. # 25 at 2, 7–8]. Second, there are distinct parties and issues in the two actions. In that respect, *SSDD, LLC v. Underwriters at Lloyd's, London*, which defendants cite, is distinguishable. There, the same parties filed separate lawsuits about the same insurance claim – the insurance company sought a declaratory judgment regarding misrepresentation and the policy holder filed a petition to compel an appraisal. *SSDD, LLC v. Underwriters at Lloyd's London*, No. 4:13-CV-258-CAS, 2013 WL 2420676, at *1 (E.D. Mo. June 3, 2013). Moreover the issues there were fundamentally interconnected; a material misrepresentation would be dispositive with regard to coverage. *See id.; see also St. Louis Heart Ctr., Inc. v. Athenahealth, Inc.*, No. 4:15-CV-01215, 2015 WL 6777873, at *4 (E.D. Mo. Nov. 4, 2015) (holding that a stay was appropriate where a Supreme Court decision was "potentially dispositive of this case.")

Defendants' references to *Lafoy v. Volkswagen Grp. of America, Inc., Simmons v. GlaxoSmithKline, LLC*, and *Witherspoon v. Bayer Healthcare Pharm. Inc.*, are also inapposite as they all involve a common defendant and a potential transfer to multidistrict litigation – a significant difference where judicial resources are concerned. *Lafoy v. Volkswagen Grp. of America, Inc.,* No. 4:16-CV-004660-ERW, 2016 WL 2733161, at *1, 5 (E.D. Mo. May 11, 2016); *Simmons v. GlaxoSmithKline, LLC*, No. 4:15-CV-1397-CDP, 2015 WL 6063926, at *1 (E.D. Mo.

Oct. 14, 2015); *Witherspoon v. Bayer Healthcare Pharm. Inc.*, No. 4:13-CV-01912-ERW, 2013 WL 6069011, at *2 (E.D. Mo. Nov. 18, 2013). Here, on the other hand, the question of whether the guarantors breached their agreement is not affected by the outcome of the bankruptcy proceedings. This case is therefore more analogous to *Marine Bank v. Rice*. *Marine Bank*, No. 2:13-CV-98-CDP, 2015 WL 5568018 (E.D. Mo. Sept. 22, 2015). Though there may be some "overlap" with regard to payment to the creditor, there are separate issues and parties involved. Therefore, it does not appear that the resolution of the bankruptcy proceedings will "significantly assist the district court in the decision of the factual and legal issues before it." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

**\*\*\*\***

For the foregoing reasons, the Court finds that the relevant factors weigh against instituting a stay.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to stay [Doc. #21] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 9th day of December, 2016.